FILED

JUL 3 1 2009

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

ENTERED

JUL 3 1 2009

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

| | | |
|---|---|---|
| In re:<br><br>TIMOTHY E. RAPP and<br>PEGGY SUE RAPP,<br><br>          Debtors.<br>_____<br>DONALD E. RAPP,<br><br>          Plaintiff,<br><br>v.<br><br>TIMOTHY ERNEST RAPP and<br>PEGGY SUE RAPP,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:06-bk-13903-PC<br><br>Adversary No. 6:08-ap-01384-PC<br><br><br>Chapter 7<br><br>**MEMORANDUM DECISION**<br><br><br><br>Date:  May 26, 2009<br>Time:  9:30 a.m.<br>Place:  United States Bankruptcy Court<br>       Courtroom # 304<br>       3240 Twelfth Street<br>       Riverside, CA 92501 |

On October 2, 2008, Plaintiff, Donald E. Rapp ("Donald") filed a complaint against

Defendants, Timothy Ernest Rapp ("Timothy") and Peggy Sue Rapp ("Peggy Sue") seeking a

determination that certain debts allegedly owed by Timothy to Donald were nondischargeable

under § 523 of the Bankruptcy Code.[1] Timothy and Peggy Sue seek a dismissal of the complaint

under F.R.Civ.P. 12(b)(6), or alternatively, a summary judgment against Donald on the causes of

action alleged in Donald's complaint.[2] The court, having considered the pleadings and

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and
Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to
the Federal Rules of Bankruptcy Procedure ("F.R.Civ.P."), which make applicable certain
Federal Rules of Civil Procedure ("FRBP").

[2] Donald is Timothy's father and Peggy Sue's father-in-law. Donald is represented in this
adversary proceeding by his wife and Timothy's step-mother, Joyce W. Rapp.

1   arguments of counsel, makes the following findings of fact and conclusions of law pursuant to

2   F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to adversary proceedings in

3   bankruptcy cases.

4                          I. STATEMENT OF FACTS

5   A. Donald's Claims.

6          Donald's claims against Timothy are based upon Timothy's alleged breach of two

7   contracts between Donald and Timothy entered into in 2001.  With respect to the first contract,

8   Donald's complaint states, in pertinent part:

9        a.    After Timothy graduated from college he lived in his father's and [now deceased]
               mother's home, refusing to go out and work and obtain his own home, even when
10             requested to, even though he was past 30 years of age.

11       b.    Therefore, in 2001, Donald and Timothy's mother refinanced their home, in order
               to lend $50,000 to Timothy to purchase his own home (at the approximate cost of
12             $270,000); other monies were used to pay down Timothy's debts that he had
               incurred with his mother's assistance, without his father's knowledge.

13
         c.    Timothy was to repay the $50,000 when he sold that home; he sold it in 2004 for
14             approximately $480,000, thus realizing a profit, but refused to pay his father the
               $50,000 he had agreed to pay.[3]

15
    With respect to the second contract, Donald's complaint states, in pertinent part:
16
         a.    Also in 2001 Donald needed to take care of his terminally-ill wife full-time and
17             Timothy was still not working, so Donald allowed Timothy to take over managing
               his vending machine business, which Donald started and of which he paid for and
18             owned all of the assets.  The agreement was that Donald was to receive $800 per
               month of the daily proceeds and 50% of the sale proceeds.  However, Timothy
19             kept all of the daily proceeds.

20       b.    Timothy sold the business in 2005, for approximately $60,000, and kept all of the
               sale proceeds, as well, thus breaching the agreement.[4]
21
    Donald claims damages of $50,000 for Timothy's alleged breach of the first contract and $46,000
22
    for Timothy's alleged breach of the second contract, for a total of $96,000.
23

24

25  [3] Complaint for Non-Dischargeability, p.2, lines 4-13.

26  [4] Id. at p.2, lines 18-25.

27
                                     - 2 -

B. Donald's Bankruptcy.

On September 26, 2002, Donald filed a voluntary petition under chapter 7 in Case No. 6:02-bk-25671-MJ, In re Donald E. Rapp, Debtor, in the United States Bankruptcy Court, Central District of California, Riverside Division. Donald filed his schedules and statements on September 26, 2002. Donald's schedules were signed under penalty of perjury on September 19, 2002.

In Question # 12 of Schedule B, Donald was asked if he owned stock or an interest in an incorporated or unincorporated business. Donald answered Question # 12 stating: "None." In Question # 15 of Schedule B, Donald was asked if he owned any accounts receivable. Donald answered Question # 15 stating: "None." In Question # 17 of Schedule B, Donald was asked to disclose any other liquidated debts owing to him on the date of bankruptcy. Donald answered Question # 17 stating: "None." In Question # 20 of Schedule B, Donald was asked to disclose any other contingent or unliquidated claim of every nature owned on the date of bankruptcy and to give the estimated value of each. Donald answered Question # 20 stating: "None." Finally, in Question # 33 of Schedule B, Donald was asked to disclose any other personal property of any kind not already listed. Donald answered Question # 33 stating: "None."

On December 10, 2002, the trustee filed a report of no assets. Donald received a discharge on January 7, 2003, and the case was closed on January 23, 2003.

C. The State Court Action.

In January 2006, Donald filed suit against Timothy in Case No. RIC 443161, styled Donald Rapp v. Timothy Rapp, in the Superior Court of California, County of Riverside, seeking to collect the balance due under each of the contracts. Timothy failed to file an answer to Donald's complaint, and Timothy's default was entered in March 2006. In January 2007, a default judgment was entered against Timothy in the amount of $96,000, plus interest and costs of court.

1   D. Timothy and Peggy Sue's Bankruptcy.

2        Prior to entry of the default judgment, Timothy and Peggy Sue sought bankruptcy relief.

3   On December 19, 2006, Timothy and Peggy Sue filed a voluntary chapter 7 petition in Case No.

4   6:06-bk-13903-PC, In re Timothy Ernest Rapp and Peggy Sue Rapp, Debtors, in the United

5   States Bankruptcy Court, Riverside Division. Donald was not listed in the schedules as the

6   holder of a claim against the estate. The proof of service attached to the Notice of Chapter 7

7   Case, Meeting of Creditors, and Deadlines issued by the bankruptcy clerk on December 19, 2006,

8   indicates that Donald was not given notice of the filing of the petition and the deadline to file a

9   complaint to determine the dischargeability of the debts owing to him. However, Timothy and

10  Peggy Sue did disclose the pendency of the Donald's state court action against Timothy in

11  response to Question # 4 of the Statement of Financial Affairs, noting that a default had been

12  entered in the case. On January 26, 2007, the trustee filed a report of no assets. Timothy and

13  Peggy Sue received a discharge on July 2, 2007, and the case was closed on July 26, 2007.

14  E. The Adversary Proceeding.

15       On October 28, 2008, Donald filed his complaint in this adversary proceeding seeking a

16  determination that Timothy's liability on the contracts was nondischargeable under 11 U.S.C.

17  §523(a)(3)(B).[5] Donald states that he pursued the state court action unaware that Timothy and

18  Peggy had filed a chapter 7 petition. Donald further states in his complaint that he had no actual,

19  constructive, or inquiry notice of Timothy and Peggy's bankruptcy filing until his daughter and

20  son-in-law informed him of the filing in April 2008. Donald seeks a determination that the total

21

22    [5] In his complaint, Donald alleges that "[t]he debt is nondischargeable under sections

23  523(a)(2)(A), 523(b)(1)(C) and 523(C)(4)." Complaint for Non-Dischargeability, p.2, lines 3-4.
    The complaint further alleges that "[t]he debts are additionally nondischargeable under sections

24  727(a)(2)(A) and 717." Id. at p.4, l.10. The Code does not contain §§ 523(b)(1)(C), 523(C)(4),
    or 717. Section 727(a)(2)(A) is a statutory ground for objection to a debtor's discharge, not the

25  dischargeability of a particular debt. The court construes Donald's complaint as alleging a claim

26  under § 523(a)(3)(B) to determine the nondischargeability of a debt of a kind specified in §
    523(a)(2).

27

-4-

1    debt of $96,000, plus pre- and post-judgment interest, is non-dischargeable.

2          On April 22, 2009, Timothy and Peggy Sue filed their motion seeking dismissal of

3    Donald's complaint under F.R.Civ.P. 12(b)(6), or alternatively, a summary judgment against

4    Donald on the causes of action alleged in the complaint. On May 6, 2006, Donald filed written

5    opposition to the motion. Donald and Peggy Sue filed a reply to Donald's opposition on May 20,

6    2009.[6] After a hearing on May 26, 2009, the matter was taken under submission.

7                              II. DISCUSSION

8          This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

9    157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and

10   (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a). To establish that a debt is

11   nondischargeable, the plaintiff must prove the allegations of the complaint by a preponderance of

12   the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to the dischargeability of

13   a debt are to be literally and strictly construed against the objector and liberally construed in

14   favor of the debtor. Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th Cir. 1997).

15   A. Standard for Dismissal Under F.R.Civ.P. 12(b)(6).

16         Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the court, upon motion

17   of the defendant, to dismiss a complaint for failure to state a claim upon which relief can be

18   granted. In resolving a Rule 12(b)(6) motion, the court must (a) construe the complaint in the

19   light most favorable to the plaintiff; (b) accept all well-pleaded factual allegations as true; and (c)

20   determine whether plaintiff can prove any set of facts to support a claim that would merit relief.

21   Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

22         Under Rule 12(b)(6), the party moving for dismissal has the burden of proving that no

23   claim has been stated. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

24   _____

25   [6] The court has not considered Donald's Response to Reply to Opposition to Motion to Dismiss
26   filed on May 20, 2009. The record closed with the filing of Donald and Peggy Sue's reply to
     Donald's opposition to the motion.
27

1  The movant must show beyond doubt that the plaintiff can prove no set of facts in support of the

2  claim that would entitle him to relief.  Loral Terracom v. Valley Nat'l Bank, 49 F.3d 555, 558

3  (9th Cir. 1995).  Material which is properly submitted as part of the complaint may be considered

4  on a motion to dismiss, but documents and evidence outside the complaint may not be considered

5  absent a motion for summary judgment.  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  In

6  determining a motion to dismiss, however, the court "may take judicial notice of matters of

7  public record outside the pleadings."  MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th

8  Cir. 1986).[7]

9  B.  Judicial Estoppel.

10      Judicial estoppel is an equitable doctrine invoked by the court to prevent fraud and abuse

11  of the judicial process.  See Morris v. California, 966 F.2d 448, 453 (9th Cir. 1991), cert. denied,

12  506 U.S. 831 (1992).  Judicial estoppel precludes a party from gaining an advantage by asserting

13  one position, and then later seeking an advantage by taking a clearly inconsistent position.  See

14  New Hampshire v. Maine, 532 U.S. 742, 749 (2001); Hamilton v. State Farm Fire & Cas. Co.,

15  270 F.3d 778, 782 (9th Cir. 2001).  Judicial estoppel also applies out of "'general

16  consideration[s] of the orderly administration of justice and regard for the dignity of judicial

17  proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" Hamilton,

18  270 F.3d at 782 (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).  The court

19  considers three factors to determine whether to apply judicial estoppel:

20          First, a party's later position must be 'clearly inconsistent' with its earlier position.
          Second, courts regularly inquire whether the party has succeeded in persuading a court to

21

22  _____

23  [7] Accordingly, the court grants Timothy and Peggy Sue's Request for Judicial Notice and takes
   judicial notice of the pleadings filed in (a) Case No. 6:02-bk-25671-MJ, In re Donald E. Rapp,
   Debtor, in the United States Bankruptcy Court, Central District of California, Riverside Division;
24  (b) Case No. 6:06-bk-13903-PC, In re Timothy Ernest Rapp and Peggy Sue Rapp, Debtors, in the
   United States Bankruptcy Court, Riverside Division; and (c) Adversary No. 6:08-ap-01384-PC,
25  Rapp v. Rapp, in the in the United States Bankruptcy Court, Riverside Division – copies of
   which are attached to Timothy and Peggy Sue's Request for Judicial Notice as Exhibits 1, 2 and
26  3, respectively.

27

1    accept that party's earlier position, so that judicial acceptance of an inconsistent position
     in a later proceeding would create 'the perception that either the first or the second court
2    was misled.' Absent success in a prior proceeding, a party's later inconsistent position
     introduces no 'risk of inconsistent court determinations,' and thus no threat to judicial
3    integrity. A third consideration is whether the party seeking to assert an inconsistent
     position would derive an unfair advantage or impose an unfair detriment on the opposing
4    party if not estopped.

5    Hamilton, 270 F.3d at 782-83 (quoting New Hampshire, 532 U.S. at 750-51 (internal citations

6    omitted)). "The Ninth Circuit requires that the inconsistent position have been 'accepted' by the

7    first court." Associated Vintage Group v. Sims (In re Associated Vintage Group, Inc.), 283 B.R.

8    549, 566 (9th Cir. BAP 2002) (quoting Hamilton, 270 F.3d at 783). "The focus of reliance is

9    shifted from the opposing party to the court, which is, in effect, the victim." Associated Vintage

10   Group, 283 B.R. at 566. The meaning of "acceptance" in the bankruptcy context is construed

11   broadly "to protect the integrity of the bankruptcy process." See Hamilton, 270 F.3d at 785.

12          In Hamilton, the Ninth Circuit applied judicial estoppel to prevent a debtor from asserting

13   a cause of action in a later proceeding that was not disclosed as an asset in a prior bankruptcy

14   case. 270 F.3d at 782. Lawrence Hamilton ("Hamilton") filed an insurance claim with State

15   Farm Insurance Company ("State Farm") for various items allegedly stolen from his home on

16   May 30, 1997. Id. at 780. State Farm was suspicious of the claim and investigated its validity.

17   Id. When the claim was not paid immediately, Hamilton, who was experiencing financial

18   difficulty and needed money, charged that State Farm was acting in bad faith and threatened

19   litigation. Id. at 781. On October 31, 1997, Hamilton filed a voluntary petition under chapter 7.

20   Id. Shortly thereafter, State Farm denied Hamilton's claim and voided coverage under the

21   policy's concealment and fraud provision. Id. On November 14, 1997, Hamilton filed his

22   schedules and statements. Id. Hamilton disclosed a "160,000 residential vandalism loss" in his

23   statement of financial affairs, but failed to disclose in his schedules either the insurance claim or

24   his alleged causes of action against State Farm. Id. Hamilton received a discharge on April 6,

25   1998. Id. However, Hamilton's discharge was later vacated and the bankruptcy case dismissed

26   due to Hamilton's failure to provide the chapter 7 trustee with information regarding the

27

- 7 -

1    vandalism loss or claims against State Farm. Id. Three months after dismissal of the bankruptcy

2    case, Hamilton filed a state court lawsuit against State Farm for damages for alleged breach of

3    contract and breach of the covenant of good faith and fair dealing. Id. After the state court

4    action was removed to the district court, State Farm filed a motion for summary judgment

5    alleging, among other things, that Hamilton was judicially estopped from asserting his claims

6    against State Farm because he had failed to disclose both the insurance claim and alleged causes

7    of action against State Farm in his bankruptcy schedules. Id. at 782. The district court agreed

8    and granted State Farm's summary judgment motion, holding that "Hamilton's claim was barred

9    by the doctrine of judicial estoppel because Hamilton took contradictory positions by first failing

10   to amend his bankruptcy schedules to include his insurance claim and pending bad faith action

11   against State Farm, and then persisting in his attempts to recover on the claims against State

12   Farm." Id.

13        The Ninth Circuit affirmed, holding that a debtor "is precluded from pursuing claims

14   about which he had knowledge, but did not disclose, during his bankruptcy proceedings, and that

15   a discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to

16   provide a basis for judicial estoppel, even if the discharge is later vacated." Id. at 784. "Judicial

17   estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential

18   cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or

19   disclosure statements to identify the cause of action as a contingent asset." Id. The Ninth Circuit

20   concluded that judicial estoppel was necessary "to protect the integrity of the bankruptcy

21   process," noting that Hamilton's failure to disclose assets on his bankruptcy schedules provided

22   "the most compelling reason to bar him from prosecuting claims against State Farm." Id. at 785.

23        In this case, Donald clearly asserts inconsistent positions. Donald seeks to recover on

24   two contracts with Timothy, notwithstanding his failure to disclose either contract as an asset in

25   the schedules filed in his bankruptcy case. Donald argues that judicial estoppel does not apply

26   because, despite the nondisclosure in his schedules, the trustee in his bankruptcy case was on

27

1  notice that he owned a business by virtue of the caption on his bankruptcy petition.[8]  Donald

2  further argues that he relied on the advice of counsel in listing just "his d/b/a in the voluntary

3  petition caption" and providing no other information in his schedules and statements regarding

4  the business or his contracts with Timothy.[9]  According to Donald:

5      "Even if this Court were to find that plaintiff somehow 'concealed' his interest in the
        business, despite its inclusion in the caption of his Voluntary Petition . . . , it was
6      incumbent upon the Trustee to follow up on this matter by taking possession of the
        business away from Timothy, pursuant to 11 U.S.C. § 721. The fact that she did not,
7      indicates the truth of plaintiff's statements in this case: Timothy was in full possession
        and control of the business and not giving his father any proceeds therefrom. Thus, the
8      fact that she knew of Donald's interest in the business but <u>didn't</u> pursue that business
        interest proves that Timothy has no ground for asserting 'judicial estoppel' herein."[10]

9

10 The court disagrees. It is undisputed that Donald failed to disclose the contracts with Timothy in

11 his original schedules filed with the court and that the schedules were not amended to disclose

12 the contracts. Furthermore, Donald did not disclose any facts concerning the business in his

13 original or amended statement of financial affairs when specifically requested to do so.[11]

14     In the context of an objection to discharge, the Ninth Circuit has held that a debtor's

15 reliance on the advice of counsel must be "in good faith" in order to establish that such reliance

16 is indicative of a lack of fraudulent intent. <u>Adeeb v. First Beverly Bank (In re Adeeb)</u>, 787 F.2d

17 1339, 1343 (9th Cir. 1986). Section 521(1) requires the debtor to file "a schedule of assets and

18 liabilities, a schedule of current income and current expenditures, and a statement of the debtor's

19

20  _____

21 [8] The caption of Donald's voluntary petition states: "Donald E. Rapp, D/B/A Munchy Machines;
   Donald Eugene Rapp."

22 [9] Opposition to Motion to Dismiss or Summary Judgment, p.5, lines 1-2.

23

24 [10] <u>Id.</u> at p.3, lines 1-9.

25 [11] In response to Question 18(a) of his Amended Statement of Financial Affairs, Donald was
   asked to disclose facts concerning the nature, location, and name of any business owned or
26 operated within 6 years prior to the filing of the petition. Donald answered under penalty of
   perjury: None.
27

-9-

1  financial affairs." 11 U.S.C. § 521(1).[12]  Schedules and statements which are inaccurate or

2  incomplete must be corrected by the debtor, and any ambiguities contained therein are construed

3  against the debtor.  Mohring, 142 B.R. at 394-95; see Hyman v. Plotkin (In re Hyman), 967 F.2d

4  1326, 1319 n.6 (stating that "[g]iven that the debtor controls the schedules, we construe any

5  ambiguity therein against him").  Whether or not the documents are prepared by an attorney,

6  debtors bear an independent responsibility for the accuracy of the information contained in their

7  schedules and statements.  See, e.g., AT&T Universal Card Servs. Corp. v. Duplante (In re

8  Duplante), 215 B.R. 444, 447 n.8 (9th Cir. BAP 1997) (noting that "[s]chedules and statements

9  of financial affairs are sworn statements, signed by debtors under penalty of perjury" and warning

10  that "[a]dopting a cavalier attitude toward the accuracy of the schedules and expecting the court

11

---

12  [12] Debtors have an absolute duty to file complete and accurate schedules.  See Cusano v. Klein,
264 F.3d 936, 946 (9th Cir. 2001); In re Mohring, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992),
13  aff'd, 153 B.R. 601 (9th Cir. BAP 1993), aff'd, 24 F.3d 247 (9th Cir. 1994).  Full and
comprehensive disclosure is critical to the integrity of the bankruptcy process.  See, e.g.,
14  Heitkamp v. Whitehead (In re Whitehead), 278 B.R. 589, 594 (Bankr. M.D. Fla. 2002) (stating
that "[t]he veracity of the debtor's Statement is absolutely essential to the successful
15  administration of the Bankruptcy Code"); In re Bohrer, 266 B.R. 200, 201 (Bankr. N.D. Cal.
16  2001) (opining that "[a] debtor may not adopt a cavalier attitude toward . . . the accuracy of his
schedules by arguing that they are not precise and correct"); McElroy v. McElroy (In re
17  McElroy), 229 B.R. 483, 488 (Bankr. M.D. Fla. 1998) (noting that "[a] debtor's complete
18  disclosure is essential to the proper administration of the bankruptcy estate"); In re Carter, 205
B.R. 733, 736 (Bankr. E.D. Penn. 1996) (observing that "[h]onesty and full disclosure are the
19  most basic hallmarks of good faith"); Holder v. Bennett (In re Bennett), 126 B.R. 869, 875
20  (Bankr. N.D. Tex. 1991) (stating that "[c]andor, accuracy and integrity are required of a debtor in
bankruptcy").  "The proper 'operation of the bankruptcy system depends on honest reporting.'"
21  Mohring, 142 B.R. at 389, quoting Payne v. Wood, 775 F.2d 202, 205 (7th Cir. 1985).

22
Schedules and statements are signed under penalty of perjury.  FRBP 1008.  Debtors are
23  presumed to have read the schedules and statements before signing the documents, and are
responsible for their contents.  Carpenter v. Fanaras (In re Fanaras), 263 B.R. 655, 667 (Bankr.
24  D. Mass. 2001).  See, e.g., In re Pettey, 288 B.R. 14, 21 (Bankr. D. Mass. 2003) (stating that the
"[d]ebtor bore an independent responsibility for the accuracy of his schedules and matrix");
25  Palmer v. Downey (In re Downey), 242 B.R. 5, 15 (Bankr. D. Idaho 1999) (stating that "attorney
26  error does not absolve a debtor, who signs the petition and schedules under penalty of perjury,
from the duty to ensure the information is accurate and complete to the best of his knowledge").

27

- 10 -

1  and creditors to ferret out the truth is not acceptable conduct by debtors or their counsel"). Errors

2  and omissions in a debtor's schedules and statements may be corrected by amendment. Debtors

3  have the right to amend their petition, lists, schedules or statement of affairs <u>as a matter of course</u>

4  at any time until the case is closed. FRBP 1009(a) (emphasis added). Amendments are not only

5  liberally allowed, but no court approval is required. <u>Martinson v. Michael (In re Michael)</u>, 163

6  F.3d 526, 529 (9th Cir. 1998); <u>In re Bowden</u>, 254 B.R. 907, 909 (Bankr. D. Idaho 2000).

7          Whether or not the petition caption provided some inquiry notice to the trustee that

8  Donald did business as "Munchy Machines" prior to bankruptcy, Donald had an affirmative duty

9  to amend "his disclosure statements and schedules to provide the requisite notice [of his

10 contracts with Timothy], because of the express duties of disclosure imposed on him by 11

11 U.S.C. § 521(1), and because both the court and [Donald's] creditors base their actions on the

12 disclosure statements and schedules." <u>See Hamilton</u>, 270 F.3d at 784. Having failed to disclose

13 the contracts with Timothy as assets in his bankruptcy case and having received a discharge in

14 such case, Donald is judicially estopped from pursuing his claims against Timothy based upon

15 such contracts in this adversary proceeding. <u>Hamilton</u>, 270 F.3d at 784; <u>Hay v. First Interstate</u>

16 <u>Bank of Kalispell, N.A.</u>, 978 F.2d 555, 557 (9th Cir. 1992). Given the court's application of the

17 doctrine of judicial estoppel, the court cannot find that Donald is unable to prove any set of facts

18 in support of his claims against Timothy or Peggy Sue which would entitle him to relief in this

19 adversary proceeding.

20                              CONCLUSION

21          Donald has failed to state a claim upon which relief can be granted against Timothy or

22 Peggy Sue. Accordingly, the motion of Timothy and Peggy Sue for dismissal of this adversary

23 proceeding pursuant to Rule 12(b)(6) will be granted and the adversary proceeding will be

24 dismissed with prejudice.

25

26

27

                                    - 11 -

1       A separate order will be entered consistent with this opinion.

2    Dated: July 31, 2009

3                                              PETER H. CARROLL
                                               United States Bankruptcy Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

                                   - 12 -

| In re: | | CHAPTER: |
|--------|--------|----------|
| | Debtor(s). | CASE NUMBER: |

## NOTE TO USERS OF THIS FORM:

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)**  **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)**  **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) _____ MEMORANDUM DECISION_____
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of  7/31/09  , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒  Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☒  Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | | CHAPTER: |
| --- | --- | --- |
| | Debtor(s). | CASE NUMBER: |

**ADDITIONAL SERVICE INFORMATION** (if needed):

## ELECTRONIC

- Brian T Pedigo     brian@pedigolaw.com

- United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

U.S. MAIL

Joyce W Rapp
PO Box 3482
Crestline, CA 92325

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                                    **F 9021-1.1**